Samuel H. Hofstadter, J.
Motion to resettle order of December 4, 1956, is granted to the extent of making the increase of the weekly alimony effective from and as of July 1, 1956. The *5 defendant husband’s conduct hardly commends itself. His default, however, on the original settlement of the order was due to no fault on his part, and, in the circumstances, the same disposition should now be made which would have been made had the defendant not defaulted in the settlement.
The foregoing constitutes the decision of the court in the instant application. I cannot, however, leave the matter here. This action is a classic example of the type of matrimonial litigation that has given rise in recent years to so much concern on the part of judges, lawyers, social agencies and the community at large. The suit, commenced 13 years ago and now reopened on a question of modification of an alimony award, was an apparently simple one confined to the trial court level. It involved no complicated questions of either fact or law requiring the attention of an appellate tribunal. Despite this, however, the matter has occupied the time and efforts of some half dozen lawyers and at least 12 judicial officers of our court.*
In addition, this case had a prior history of marital maladjustment dating back almost a quarter of a century, and of hearing and rehearing in the Domestic Relations Court — one of the busiest and most useful of our city — where both judicial intervention and social aid were employed in an attempt to solve the legal and underlying marital problems.
This is, in short, a typical case where the parties have ‘1 shopped ’ ’ from court to court seeking help. For matrimonial litigation clings to its victims with all the tenacity of the Old Man of the Sea. Even when the substantive matter of the action is terminated — by dissolution or otherwise — the question of support persists, often throughout the lifetime of the parties, and is a continuous source of vexation and legal controversy. In the interest of the litigants and of the efficient administration of justice, there must be a renovation in the procedures for handling family matters in the court and, more particularly, in the principles relating to alimony and support.
From the point of view of procedure, it is manifest that there is a dire need of an integrated court, properly staffed and equipped with social aids, to handle all family matters. A significant beginning has been made in the establishment of Part YTT in New York County. This pilot project should be encouraged and expanded so that a court dealing with the family will be able *6 to prescribe comprehensive and final relief rather than piecemeal and temporary palliatives. It is not suggested whether such a court be part of the general court of the City of New York, a separate court, or a part of the Supreme Court. Whatever its place in the judicial system, however, a unified court for the family is indispensable.
Further, in an effort to reduce the numerous applications for rehearings and modifications of support allowances, consideration must be given to the use of more efficient methods employed in other jurisdictions to determine the financial capacity of the husband and the need of the wife. Standardized budgets for various income groups, court auditing offices equipped with accountants and investigators, sworn financial statements, etc. should be instituted.
However, changes in procedure alone are not sufficient; a shift in the basis of awards is requisite. The perverse system which now obtains for the fixing of alimony and support is unjust in concept and faulty in application. It is unfair to men and to women. Honest and deserving women get too little — their children likewise — and others far too much for their own good and that of society.
In evolving a modern system for fixing alimony and support the elements of (1) fault, (2) financial capacity and (3) need must be reappraised.
Alimony should not be a reward for virtue nor a punishment for guilt. The element of fault should be de-emphasized. Fault should not be a bar to alimony except in cases of gross culpability, such as infidelity or abandonment. In most cases neither party is at fault or both are in some degree. Generally, family break-ups are not due to specific acts of either spouse, legal fictions notwithstanding. They result rather from general malaise to which both have contributed. Fault usually comes after malaise has set in; it is the symptom not the cause of domestic discord.
The factor of need, too, must be adjusted to woman’s new position in our society. The married woman has come a long way since the days of Blackstone when she had no legal identity apart from her husband’s; she is no longer the Victorian creature, “ something better than her husband’s dog, a little dearer than his horse ”. She is now the equal of man, socially, politically and economically. It is time that consonant with this new approach to woman’s status we develop a modern basis for fixing alimony and support which will have its roots in reality.
*7 A practical approach in awarding alimony would he to proceed on the basis of what we may term “ net need ”, the wife’s actual financial requisite less her current assets and earning potential in relation to her husband’s capacity to pay. If a woman proves need she should have support — but when she can, she should also be required to mitigate her husband’s burden either by her own financial means or earning potential or both. The want alimony seeks to solve is economic — for alimony is basically the statutory substitute for the marital obligation of a husband to support his wife.
Each case must be treated as its particular circumstances indicate for there are many variables that should be taken into account in the determination of alimony. If a woman has contributed however indirectly to her husband’s career and helped to increase his substance she may rightfully be regarded as entitled to a share of his gain. A woman who has devoted the greater part of her time to caring for a home and children has had little opportunity to learn the skills necessary to earn a living in our competitive society. The court should and will take cognizance of her plight.
But the same considerations do not operate in the case of a young woman who in all but form has remained alien to her husband’s interest. Why should ex-wives and separated women seek a preferred status in which they shall toil not, neither shall they spin. Alimony was originally devised by society to protect those without power of ownership or earning resources. It was never intended to assure a perpetual state of secured indolence. It should not be suffered to convert a host of physically and mentally competent women into an army of alimony drones.
Ironically, inflated alimony awards are frequently not only financially disastrous to the man but psychologically deleterious to the woman. She remains hopelessly entangled in the web of the past, never establishing a new and independent life but ££ wandering between two worlds one already dead the other powerless to be born ”.
In the field of matrimonial litigation and alimony awards the husband and wife are not the sole parties. Society itself has locus standi for it is deeply affected in vital aspects. For the benefit of all concerned, we must proceed in a climate of sanity that will reflect modern reality and in a spirit of sympathetic understanding that will achieve justice and equity.
Settle resettled order accordingly.

 Among the Justices and Official Referees who at one time had various aspects of this litigation before them are: Justice (now Presiding Justice) Peck, Justice (now Surrogate) Collins, Justices Aurelio, Benvenga, Brady, Denis O’Leary Cohalan, Gavagan and Nathan; also the late Lloyd Church, John P. Cohalan, and Aaron J. Levy.