Samuel H. Hofstadteb, J.
This is an application for temporary alimony. It is typical, in certain aspects, of more than 75 matrimonial matters that came before me in a single month (September Term, 1957, Bronx County). There were 36 motions for temporary alimony, a resume of which is set forth as Appendix A to this opinion, and an approximately equal number of requests for modifications of awards, punishment for contempt, commitment, and habeas corpus writs concerning custody of children of embattled spouses.
The shocking ineptitudes in our procedure for temporary alimony evoke a more extended comment than the immediate circumstances of the instant application might otherwise require. For the time has come to deal drastically with such motions. We should evolve modernized methods that will result in greater equity for both parties by introducing wholesome realism at the very outset of the litigation.
In this case, a young woman, married only 39 days prior to separation, seeks support from her hairdresser husband — who had twin children by a prior wife — although she is a professional dancer of vocational skill, now living with her parents. On the papers before me, her brief marital adventure scarcely entitles her to a future of secured indolence.
The papers abound in recriminations affecting the ultimate issue of annulment. Relating to the immediate problem of temporary alimony, the affidavits of both husband and wife present the classic but nonetheless unedifying spectacle of financial hyperbole on one hand, and pitiful deprecation on the other. The wife claims her husband earns almost twice the sum he concedes; he describes her as near the pinnacle of a remunerative artistic career — she avers she is without even the prospect of employment.
This disparity infests every application involving alimony that came before me (with a single exception). It is obvious that it is beyond our competence to make more than a rough and tumble appraisal. We cannot reach the truth. Hence, a better procedure for temporary alimony than now prevails, grounded as it is in conflicting affidavits, ought to be instituted with all deliberate speed.
Last year, in Doyle v. Doyle (5 Misc 2d 4) I had occasion to note the need for reform in the basis of permanent alimony. It was pointed out that we must recognize that women in the *398 modern world were no longer a “ second” and thus impliedly inferior sex, but rather mature human beings with rights, and, therefore, with corresponding obligations. In at least one quarter of the 75 September cases referred to, the wife was self-supporting — in a few instances with greater earning power than her husband. This confirms the view expressed in Doyle v. Doyle that a practical approach would be to proceed on the basis of “ net need ” — the wife’s actual financial requirements, less her current assets and earning potential in relation to her husband’s capacity to pay. If a woman proves need, she should have support; but when she can, she should also be required to mitigate her husband’s burden, by either her own financial means or her earning potential, or both. In either case the matter of fault, except gross culpability such as adultery or willful abandonment, should be de-emphasized.
But however equitable the formula for alimony — temporary or permanent — it will be ineffectual if not based on an improved procedure in application — commencing with motions, such as this, for temporary alimony.
It has been suggested that temporary alimony is relatively unimportant since it serves merely as a stopgap pending trial and the fixation of the permanent award. Though this may have been true in the distant past, it no longer obtains. For with the present volume of actions, permanent alimony is frequently the same as temporary — often unconsciously based on it. The trial court, generally, has no greater facilities than Special Term to make realistic determinations. The many applications for modifications of awards and motions to punish for contempt for failure to pay tend to indicate that methods of fixing permanent alimony are no more searching chan those utilized for the temporary award. More effective procedures are required for making awards of both types.
The application for temporary alimony is the first and often the most telling blow struck in the matrimonial conflict. Experience confirms that the preliminary skirmish not only often determines the battle but is, in fact, the battle itself. Generally, by the time a matrimonial action is instituted, the parties, on the surface at least, have accepted the marital breakdown as a fact. They are unequal, however — due, perhaps, to a sense of vengefulness or cupidity — to facing its consequences. Principle and propriety alike dissolve with resultant distortion in perspective. It is not uncommon for the couple even to debase the honored writ of habeas corpus, invoked to establish custody rights, into an ancillary gambit. They do not hesitate to use *399 children — by contesting custody or right of visitation — as pawns in the game! In one instance, as I am informed by a member of the court staff, who sought to mediate between the parties in a custody writ, the suggestion —if not outright offer — was made that the wife would consent to more generous visitation rights, if the husband would agree to the wife’s obtaining a certain TV set, some urns and better alimony terms!
When the authority of the court intervenes to settle, if not to solve, the immediate financial problem, the heat of battle may subside. Once temporary alimony has been secured, cases are permitted to drag on almost indefinitely — frequently discontinued, withdrawn or marked off as a result sometimes of a foreign divorce, sometimes of an out-of-court voluntary agreement, and sometimes of sheer attenuation.
But the method which had been employed to make what is so frequently the decisive award was based on factual chaos generated by present procedures. This crucial matter has been determined largely on the basis of widely conflicting affidavits manifesting a reckless inaccuracy that involves perjurious absurdities. There is little to choose between the husband’s position and the wife’s. Like Tweedledum and Tweedledee in Alice Through the Lo oleing Glass, with an appalling disregard of fact, one spouse invariably shouts “ Nohow ” and the other, “ Contrariwise.”
In over 60% of the September Term cases, the wife’s sworn affidavits claimed the husband’s assets to be 200-400% more than his sworn affidavit admitted. In 10% of the cases seeking alimony no figures of earning and need were given by either side — just harsh demands on one hand and minimal offers on the other. Faced with conflicting or unsubstantiated claims the court must rely on experienced intuition to extract even a modicum of truth. Under the present defective and awkward system it is surprising that more injustices do not accrue; the Judge indeed “ sees through a glass but darkly.”
It is beyond the purview of this opinion to detail in elaboration the variety of more efficient methods that should be instituted; my purpose has been merely to highlight the compelling need for efficacious procedures. Instruction, however, may be derived from other communities, which have already inaugurated more salutary methods. In some jurisdictions, it is accepted practice to make use of such aids as standardized budgets for various income levels. Others, utilize auditing offices equipped with accountants, investigators and social workers. Considerable success has been achieved also by the requirement *400 that both husband and wife submit sworn and detailed financial statements. The courts, making use of the latter (device, have found that by pinpointing vital items of income and expense in a financial questionnaire, both parties are obliged to maintain a degree of responsible accuracy. All these techniques — and many others of value — are standard procedure in courts throughout the land. We could choose among the best and adapt them to our needs.
Preliminary to the adoption of a new procedure, and as a basis therefor, it is suggested that on any motion for temporary alimony and counsel fee, the moving and opposing papers must include certain verified information on a printed form supplied by the clerk’s office. In Appendix B to this opinion, I have set forth such a proposed questionnaire which might serve as a point of departure for further study.
Our present system is woefully inadequate. Granting temporary alimony, based primarily on affidavit, was devised "at a time when there were comparatively few matrimonial actions and applications for temporary alimony. It was never intended to obtain when the large volume of motions renders it impossible adequately to scrutinize each individual application.
The requirement of “ reasonable probability of success ” on the trial as a prerequisite to temporary alimony compounds the difficulty in arriving at a just solution of the financial problem, and brings additional evils in its train. About half the couples involved in matrimonial actions have minor children in the custody of the mother — necessitating an award in any case. The requirement of a preliminary showing of probable cause by the wife has a disastrous effect on those with or without children. It results in a stream of vituperation and recrimination. Every incident is magnified; every quarrel becomes an assault. The wife depicts the husband as a savage riddled with vices; the husband portrays her as a neglectful mother and a slovenly housekeeper. The charges and countercharges freeze into a permanent attitude of hostility. The consequence is that any possibility of re-establishing the marital home is lost.
Yet most of those knowledgeable in marital problems agree that a large percentage of these couples could become conciliated. They may even wistfully hope that something will stop them before it is too late. Our present procedures in applications for temporary alimony are based on the assumption of a breakup of the marriage — indeed, they render it almost inevitable. The antagonisms generated create an unwholesome psychological climate which augurs ill for the future. The parties project their mutual animosity unto their children.
*401 Only gross culpability, such as adultery or willful abandonment, should be a bar to alimony; the element of fault, otherwise, should be de-emphasized. It is generally illusory; in most cases neither party is at fault — or both are in some degree. Fault usually follows marital malaise. A symptom not a cause, it is invoked to rationalize the already existing failure of the marriage. If fault — except infidelity or abandonment — is eliminated as a vexatious issue, matrimonial litigation can proceed with a modicum of sobriety, free of debasement!
With fault in proper perspective, the concept of “ net need ” which takes into consideration the wife’s resources as well as the husband’s — can become operative and meaningful. And the determination of “ net need ” can be made at the very inception, on the occasion of the temporary alimony award, by means of improved procedures.
This motion for alimony pendente lite is denied. Counsel fee is allowed in the sum of $300 payable $150 within 20 days after service of a copy of the order to be entered hereon with notice of entry and $150 when the cause first appears on the ready calendar. Within 10 days after payment of the first installment of counsel fee, note of issue is to be filed. Settle order.

APPENDIX A

Statistical Resume o£ September Term Motions for Temporary Alimony

Number of Years Married

Under 1 year...................................10%
1-5 years ......................................40%
5-10 years .....................................17%
Over 10 years..................................27%
Not given ..................................... 7%

Number of Minor Children

None ..........................................24%
1 .............................................43%
2 .............................................17%
3 .............................................13%
4 or over....................... 3%

Disparity between income claims of husband and wife

Under 25% ....................................1%
25%-50% ..................................... 2%
50%-100% .................................... 5%
100%-200% ...................................20%
200%-400% and over...........................63%
No figures given................................10%
Number of cases in which wife employed — 23%

*402
APPENDIX B

A. General Information
1. Name:
2. Address:
3. Date of marriage:
4. Age :
5. Children of marriage (list number, age and sex):
6. List any other children living with either of parties (number, age, sex, relationship and whether said children have any independent source of support):
7. Any prior marriages and issue therefrom:
8. Occupation: (If wife is not employed, state occupation, if any, prior to marriage.)
B. Financial Information
I. Earnings (Yearly earnings over a period of 3-5 years. It is not required, but it would be helpful to attach copy of income tax or social security statement.)
II: Expenses
1. Rent
2. Mortgage (interest and amortization)
3. Household expense
Utilities Cleaning
Food Repairs
Laundry Help
4. Clothes
5. Entertainment
6. Medical
7. Expenses for education of children
III. Assets
1. All real estate owned — whether in individual name or through corporate ownership:
2. All stocks and bonds:
3. Balances in savings bank accounts:
4. Average cheeking account balance for 3 years:
5. If you own your own business individually or as partner or stockholder, give name, your position and the net and gross income of the business during the last 3-5 years:
6. Give list of jewelry and estimated value:
7. If you own automobiles, give make, year and whether any payments due:
8. All debts (amount, creditor and relationship, if any) :
9. Any moneys due you?
10. Any other pertinent data on your financial position, such as financial support to others: