THELMA SHAPIRO, Respondent, *v.* ROBERT M. SHAPIRO, Appellant.

First Department, June 25, 1959.

*Sidney Greenman* of counsel (*Ira J. Goldstein* with him on the brief; *House, Grossman, Vorhaus & Hemley,* attorneys), for appellant.

*Emil K. Ellis* of counsel (*Maurice Shire* and *Monte L. Morris* with him on the brief; *Emil K. Ellis,* attorney), for respondent.

BERGAN, J. In February, 1954 the defendant husband left the marital domicile of the parties. Although he contends there was some justification for his leaving because of undue emotional stresses created by the wife and that, having left, he was advised by the wife's psychiatrists it would be better for her if he did not then return, he does not contend that the circumstances would warrant a termination of his obligation to support the wife, and of course, his obligation to support the four minor children of the marriage would not be impaired by the controversy with his wife.

Upon occurrence of the separation the husband made voluntary provision for the support, by weekly cash payments to the wife, maintenance of the family home in which the wife and children continued to live, and by the payment of insurance, medical and other expenses.

The wife commenced this separation action in October, 1958, four and a half years after the actual separation. For the 12-month period before the action was commenced, the record shows

that the husband's total payments for support of the wife and children were $19,948.63. Upon the institution of the action a motion was at once (Oct. 15, 1958) made for alimony *pendente lite*.

The court at Special Term granted the motion to the extent of directing additional provisions be made for the support and maintenance of the family which would amount to $24,746 a year, or about $4,700 more than he had been paying voluntarily. A direction in the order for the payment of counsel fees is not in issue on appeal.

We are of opinion that the voluntary arrangements made by the husband for the support of his wife and family should have been accepted by the Special Term as sufficient during the pendency of the action and until the plenary examination of the problem to be afforded at the trial. The ratio of the amount directed by the order to be paid to the amount that was being paid suggests neither a radical difference between the view of the Judge at Special Term and the defendant husband as to adequacy; nor any basic unfairness in the general pattern of support that had been followed for the years between the separation and the institution of the action.

The court as a matter of policy will encourage adequate voluntary provisions by a husband for the support of his wife and children where there has been a separation; and the policy has particular force in the period between separation and trial of the matrimonial litigation.

The best resolution a court can reach, with the aid of whatever intuitive judgment can be brought to bear on the sifting of utterly irreconcilable affidavits, is rough approximation. Even after trial exploration, the court is often unable to reach workable economic solutions in matrimonial controversies which are entirely just to the parties, their children and to the community.

Even a superficial inspection of the results of matrimonial lawsuits would suggest that parties disposed to solve the economic consequences of marital failure can reach better resolution for themselves than the court can possibly do for them; and they should be encouraged in this direction where the possibility of agreement exists. See, for example, *Friedman* v. *Friedman* (5 A D 2d 864).

It is reasonable to think that a sense of the limitations inherent in judicial directions for support in matrimonial litigation played some part in the development of the rule-of-thumb standards which have been often applied based on "necessity" and "the same style and in the same manner" of living. See,

for examples, *Friedman* v. *Friedman* (*supra*); *Amos* v. *Amos* (282 App. Div. 692); *Smith* v. *Smith* (272 App. Div. 868); *Maurer* v. *Maurer* (263 App. Div. 290). We are of opinion the husband's voluntary payments for support have here met both the necessity test and the standard of living tests stated in many cases.

There is proof in the record that the income of the husband has substantially increased since the 1954 separation. For the purposes, at least, of determining temporary alimony in the light of the provisions made by the husband as shown in this record, such subsequent income would probably be irrelevant (*Hearst* v. *Hearst*, 3 A D 2d 706, affd. 3 N Y 2d 967) but we are not now required to pass upon what effect, if any, such an economic change for the better may have in the final judgment for support of the children, and of the wife. The orders before us do not seem to reflect its influence.

We do not, of course, hold that after a full trial of the issues the court may not determine the arrangement made by the husband is actually inadequate; we hold merely that it is a sufficient arrangement to last until the trial is had.

The orders appealed from should be modified on the law and the facts by eliminating directions for the payment of alimony and other maintenance provisions conditioned upon the continuance of support arrangements made by the husband during 1958; and as thus modified, affirmed without costs.

Botein, P. J., Breitel, Rabin and Stevens, JJ., concur.

Orders unanimously modified on the law and on the facts by eliminating directions for the payment of alimony and other maintenance provisions conditioned upon the continuance of support arrangements made by the husband during 1958; and, as so modified, affirmed without costs. Settle orders on notice.