Samuel H. Hofstadter, J.
This case, while comparatively simple legally, is typical of most matrimonial actions in overtones in human relationships. The fact of abandonment is, in effect, uncontroverted and the sole dispute — as in most such matters, ultimately — relates to the amount of alimony and counsel fees. Here, the financial question is complicated by the multiple marriages of the husband — each with issue — and by the fact that both husband and wife are in “ show business ” —with its fluctuating income and classic uncertainties.
Fortunately, under the enlightened law of our State, alimony awards are not rigidly fixed for all time but may be adjusted, on application, in the context of changed need and circumstances. ‘ ‘ Escalator clauses” have become commonplace in the field of labor negotiations; in the area of matrimonial actions, an analogous provision is written into statute, based on the requirements of justice: ‘ ‘ Where an action for divorce or separation is brought by either husband or wife, the court * * * must give * * * such directions as justice requires, between the parties, for the custody, care, education, and maintenance of any of the children of the marriage, and where the action is brought by the wife, for the support of the plaintiff. The court, by order, upon * * * application * * * after due notice * * * at any time after final *174 judgment, may annul, vary or modify such directions * * * as justice requires * * * ” (Civ. Prac. Act, § 1170).
The existence of this salutary principle and practice has not always been sufficiently emphasized in decision nor made sufficiently clear to the parties involved. Marriage is not only a sacrament; in effect, it is a continuing obligation. It cannot be a unilateral or ephemeral undertaking. Once entered into, it creates a two-sided equation — which continues to exist, in, at least, a changed form, even after the disintegration of the actual relationship. The law of our State now properly provides that as the needs or circumstances of one side of the equation measurably shift, a correlative adjustment must be made on the other. What Whitehead termed ‘ ‘ the goading urgency of contingent happenings ” is given legal recognition — and in our statute, full sanction.
The application of this principle is especially important in the instant matter where the competing considerations for decision are closely balanced. We have neither a monster on one hand, nor a martyr on the other.
The defendant is a well-known television actor with a gross income of $44,000 a year; the plaintiff, who is his second wife, is a radio actress — in “ soap operas ”. Her income has ranged from $4,000 to $20,000 annually; at present, it is about $10,000. Their child, Sharon, is now 8 years old. After four and one-half years of married life, the defendant left the plaintiff, obtained a Mexican divorce and married the lady with whom he is presently living with their six-month-old baby. It is not seriously contested that his last marriage is void — the divorce was ex parte.
The defendant’s 16-year-old daughter, issue of his first marriage (terminated by divorce), also resides with him and his new family. The defendant pays $75 per week alimony to his first wife, has the usual expenses of his profession and, in addition, owes some $8,000 back taxes to the Federal Grovernment and has some other debts.
The plaintiff maintains a five-room apartment. Now, as prior to the break-up of her marriage, she has a full-time maid to take care of their child. Sharon continues to attend a private school, as she did when her mother and father were living together. The plaintiff points out that work opportunties in the medium in which she is employed — primarily radio serials
— are diminishing. The defendant, it appears, is under contract to Benton & Bowles in the expanding field of television — but the contract expires in 1963.
*175 It is in this total context that alimony must be determined. In Doyle v. Doyle (5 Misc 2d 4) I advocated and undertook to articulate a formula of “net need” — the wife’s actual financial requisites less her current assets and earning potential in relation to her husband’s capacity to pay. The plaintiff has demonstrated that she is not the idle ornament of the Victorian age — “the lesser man”. Certainly, she is not — nor does she intend to become — an “ alimony drone ’ ’. On the other hand, at the age of 34, it cannot be fairly said that she had devoted a lifetime to the caring for her home and family; nor has she, in her less than five years of matrimony, sacrificed her own development to the advancement of her husband’s.
The defendant is responsible not only for the support of his oldest adolescent child and for alimony to his first wife, but also for the well-being of his newly born infant. Despite the invalidity of his third marriage, this court, sounding in equity, cannot ignore its issue. We no longer honor the feudal doctrine that a child born out of wedlock is a films nulius — “ nobody’s child”. As early as 1891 the court in England held, in a custody proceeding: “we are bound now, whatever may have been the case in times past, to consider what is on the whole for the benefit of the child” (Queen v. Barnardo, 1 Q. B. 194, 200).
The existence of this child, and its welfare, is relevant to the termination of the present matter as well; it is within our proper solicitude. It is not one of the ‘ ‘ inert facts ’ ’, such as condemned by Henry Adams — it is a living reality to be taken into account in the court’s consideration. The sins of the fathers may not be visited on the children by mortal man. For ‘ ‘ His thoughts are not our thoughts ’ ’; and any visitation must be instinct with that infinite compassion as well as depth-less wisdom which belong to Providence alone.
Against this background, an award for support in the total amount of $125 per week is now indicated. Curiously, this deliberate judgment after trial is almost identical to the determination arrived at, in the temporary award, by the instructed intuition of Special Term (Backer, J.). Such coincidental result, in part, at least, is perhaps due to the fact that the litigants in this matter are working people and both at the time of the temporary award and at trial, necessarily presented objective documentation of their earnings. Their frankness and co-operation with the court — in the interest of fairness to all — is praiseworthy.
It demonstrates the need for such objective criteria in all matrimonial proceedings — as already outlined by me in *176 Palmieri v. Palmieri (8 Misc 2d 396). It should be rendered mandatory — by rule — and by statute, if necessary — whenever the issue of alimony, temporary or permanent, is tendered. For viable justice can only be predicated on a sound factual basis, and a more efficient method of ascertaining factual data will facilitate the true administration of justice. Such a procedure will free it from the present miasma of perjury, acrimony and hyperbole, which now envelops almost every alimony application.
Plaintiff’s motion to strike the separation agreement and the testimony, etc., relating to it is granted — with an exception to the defendant. Plaintiff’s motion to strike testimony with respect to debts, etc., is denied, with an exception to the plaintiff. As I remarked at the trial, these are “ trifling things, relatively speaking ’ ’.
Judgment for the plaintiff. Alimony in total sum of $125 per week as follows: $75 per week for support of plaintiff and $50 for support of child. Additional counsel fees as have been agreed upon.
Settle decision and judgment accordingly.