SYLVIA E. TAYLOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1704–68. Filed March 29, 1971.

*Lawrence W. Pollack* and *Paul Sarno*, for the petitioner.
*Marvin A. Batt* and *Fred L. Baker*, for the respondent.

TANNENWALD, *Judge:* Respondent determined a deficiency of $2,810.13 in petitioner's income tax for the taxable year 1964. The primary issue before us is whether some or all of certain payments made by Adam D. Taylor during the period February 4, 1964, to

---

September 3, 1964, constitute taxable income to petitioner under section 71(a) (3), I.R.C. 1954.[1]

FINDINGS OF FACT

Petitioner had her legal residence in New York, N.Y., at the time the petition herein was filed. Her return for the taxable year was filed with the district director of internal revenue, New York, N.Y.

On December 13, 1963, petitioner commenced an action for separation against Adam D. Taylor (hereinafter referred to as Adam), who was then her husband, in the Supreme Court of the State of New York, County of New York, and simultaneously she made a motion for an order requesting, among other things, temporary alimony. Adam submitted an affidavit in opposition to said motion.

On January 21, 1964, the court (Backer, *J.*) issued a written decision in which petitioner's motion for temporary alimony was denied on the ground that Adam had been paying, and indicated that he would continue to pay, certain household expenses plus an additional $60 weekly. The court added that its determination was without prejudice to another application for similar relief in the event Adam discontinued his payments.

On February 4, 1964, the court made and entered an order with respect to petitioner's motion of December 13, 1963. The order provided, in pertinent part, as follows:

ORDERED, that plaintiff's motion for alimony pendente lite and for temporary custody of the infant children of the marriage and for other provisional relief be and the same hereby is denied, upon condition that defendant continue to make the payments hereinafter ordered; and it is further

ORDERED, that defendant continue as heretofore and until further order of this Court to make payments to plaintiff of $60.00 each week; to pay as and when due the monthly rental on Apartment 29H at 150 East 69 Street, New York, N.Y.; to pay as and when due all utility bills in connection with the use of said apartment; to pay weekly the salary of a full-time maid to maintain said apartment; to pay all expenses for laundry and dry cleaning for plaintiff and the children of the marriage; to pay as and when due all bills for medical, dental and drug expenses of plaintiff and the children of the marriage; to pay as and when due all bills for expenses relating to the education of the children of the marriage; to pay weekly the cash allowances for the children of the marriage; to pay the expenses for newspapers and periodicals; to pay weekly the transportation expenses of plaintiff and the children of the marriage; and to pay all other household expenses; and it is further

ORDERED, that this determination is without prejudice to another application for similar relief in the event defendant discontinues the aforesaid payments or any of them; * * *

---

[1] All references are to the Internal Revenue Code of 1954 unless otherwise specified.

On February 7, 1964, Adam's attorneys filed an affidavit requesting the court to issue a resettled order on the ground that the order of February 4, 1964, did not reflect the court's decision in which petitioner's motion for temporary alimony was denied. On the same day, the court issued an order to show cause why the order made on February 4, 1964, should not be resettled in the form submitted by Adam's attorneys. On February 14, 1964, the court (Backer, *J.*) made and entered a resettled order, retroactive to February 4, 1964, with respect to petitioner's motion of December 13, 1963, which provided, in pertinent part, as follows:

ORDERED, that plaintiff's motion for alimony pendente lite and for temporary custody of the infant children of the marriage and for other relief be and the same hereby is denied upon condition that the defendant continue to pay the expenses of the rent, utility bills and other expenses of the household and an additional $60 weekly ; and it is further

ORDERED, that this determination is without prejudice to another application for similar relief in the event the defendant discontinues the payments aforesaid ; * * *

Trial in the action for separation was held at Special and Trial Term Part XV of the Supreme Court of the State of New York, County of New York, on May 21 and 22, 1964. Towards the end of the trial, the following colloquy took place between the court (Frank, *J.*) and Adam's attorney :

THE COURT. * * * The temporary award of alimony and payments are continued until the final decision is rendered by the Court on this case.

Off the record.

(Discussion off the record.)

THE COURT. He will give $100 a week, and that doesn't include any extras. If you have been giving her $60 or $70, give her $100 a week. Continue all the other payments.

How much time do you want?

MR. ATKINS. What are the payments to be included? He is paying for the maid, he is paying for the rent, he is paying for the utilities.

What other payments?

THE COURT. There are no other payments.

MR. ATKINS. In addition to that he has to pay $100 a week.

THE COURT. He is paying sixty now ; isn't he?

MR. ATKINS. That he is.

THE COURT. $100 a week pending the Court's decision, and the length of time it will take me to decide this case is going to depend on counsel's ability to get a brief to me as soon as possible, and I will decide it as rapidly as I can thereafter.

On August 14, 1964, the court (Frank, *J.*) rendered its decision on the action for separation and on September 3, 1964, judgment of separation was decreed.

From September 10, 1964, through December 31, 1964, Adam paid to petitioner the sum of $5,950, pursuant to the terms of the Sep-

tember 3, 1964, separation decree, as and for permanent alimony for her support and maintenance, all of which petitioner reported in her 1964 tax return as alimony received from Adam and as to which she makes no claim herein.

From February 4, 1964, through September 3, 1964, Adam made certain payments to or purportedly for the benefit of petitioner of approximately $9,000, none of which petitioner reported in her 1964 tax return.

## OPINION

During the taxable year in question, petitioner received certain payments for her support and maintenance from her husband. These payments were received during a period when an order of the New York Supreme Court was outstanding which denied petitioner's application for temporary alimony in her separation action "upon condition that the defendant [husband] continue to pay the expenses of the rent, utility bills and other expenses of the household and an additional $60 weekly." The question before us is whether these payments are includable in petitioner's gross income by virtue of the provisions of section 71(a).[2]

Since petitioner was not "divorced or legally separated from her husband under a decree of divorce or of separate maintenance," subsection (1) of section 71(a) does not apply. By the same token, since there was no written separation agreement (and neither party has argued that there was), subsection (2) does not apply. Petitioner, however, was in fact separated from her husband and therefore if she received the payments "under a decree * * * requiring the husband to make the payments for her support or maintenance," they would be

---

[2] SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(a) GENERAL RULE.—

(1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

(2) WRITTEN SEPARATION AGREEMENT.—If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly.

(3) DECREE FOR SUPPORT.—If a wife is separated from her husband, the wife's gross income includes periodic payments (whether or not made at regular intervals) received by her after the date of the enactment of this title from her husband under a decree entered after March 1, 1954, requiring the husband to make the payments for her support or maintenance. This paragraph shall not apply if the husband and wife make a single return jointly.

includable in her gross income under subsection (3). Petitioner contends that the condition of the order denying temporary alimony did not *require* her husband to make the payments in question and furthermore that she received such payments not under the order but as a result of his continued voluntary act.

It is clear that Congress, at all times since the inception of section 22(k) of the Revenue Act of 1939, has been unwilling to change the long-standing rule regarding the nontaxability and nondeductibility of alimony payments (cf. *Gould* v. *Gould*, 245 U.S. 151 (1917)), except where certain formal actions were involved. Thus, originally, it required that there be a decree of divorce or separate maintenance. Later, in enacting the additional provisions of sections 71(a)(2) and 71(a)(3) of the 1954 Code, it still confined its liberalization of the long-standing rule to situations where there was a *written* agreement or a court decree which *required* certain payments to be made. It did not extend that liberalization to all arrangements for support payments. Compare *Cox* v. *Commissioner*, 176 F. 2d 226 (C.A. 3, 1949); *Smith* v. *Commissioner*, 168 F. 2d 446 (C.A. 2, 1948); *Dale E. Sharp*, 15 T.C. 185 (1950); *Frederick S. Dauwalter*, 9 T.C. 580 (1947).

To be sure, in applying these provisions, we have accorded due weight to the legislative desire for uniformity (see *Thomas E. Hogg*, 13 T.C. 361, 368 (1949)), and, in so doing, we have refused to permit the statutory mandate to be avoided by semantical differences arising from the "label" attached to the particular local judicial action involved (*Florence Korman*, 36 T.C. 654 (1961), affirmed per curiam 298 F. 2d 444 (C.A. 2, 1962); *Constance B. Kirby*, 35 T.C. 306 (1960)).[3] At the same time, the goal of uniformity has not caused us to infuse substantive content, which did not otherwise exist, into local judicial action and, in determining that content, we have given full effect to the applicable local law. *Dale E. Sharp, supra; Frederick S. Dauwalter, supra; Frank J. Kalchthaler,* 7 T.C. 625 (1946).

Against the foregoing background, we turn to a consideration of the substantive significance of the resettled order of the New York Supreme Court denying petitioner's motion for temporary alimony. The policy of the New York courts is to encourage voluntary arrangements for support where there has been a separation, and it has been observed that this "policy has particular force in the period between separation and trial of the matrimonial litigation. See *Shapiro* v. *Shapiro*, 8 App. Div. 2d 341, 188 N.Y.S. 2d 455, 457 (1st Dept. 1959). Only where there is a showing of the necessity for relief will an application for temporary alimony be entertained. *Spellman* v. *Spellman*, 33 App. Div. 2d 683, 305 N.Y.S. 2d 842 (1st Dept. 1969); *Lepera* v.

---

[3] Indeed, the difficulties arising from "labels" appear to have been the impetus for the enactment of sec. 71(a)(3). See S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 10–11 (1954).

*Lepera*, 56 Misc. 2d 911, 290 N.Y.S. 2d 268 (Sup. Ct. 1968). On numerous occasions, the New York courts have refused to grant temporary alimony where the husband was voluntarily making provision for the support of his family; indeed, a grant under such circumstances has been characterized as improvident. *Spellman* v. *Spellman, supra; Dominick* v. *Dominick*, 23 App. Div. 2d 645, 257 N.Y.S. 2d 309 (1st Dept. 1965); *Freid* v. *Freid*, 23 App. Div. 2d 549, 256 N.Y.S. 2d 345 (1st Dept. 1965); *Grossman* v. *Grossman*, 19 App. Div. 2d 719, 242 N.Y.S. 2d 483 (2d Dept. 1963); *Scheideler* v. *Scheideler*, 10 App. Div. 2d 991, 203 N.Y.S. 2d 109 (2d Dept. 1960); *Shapiro* v. *Shapiro, supra; Hirschberg* v. *Hirschberg*, 7 App. Div. 2d 869, 182 N.Y.S. 2d 49 (2d Dept. 1959); *Freidman* v. *Freidman*, 5 App. Div. 2d 864, 171 N.Y.S. 2d 695 (1st Dept. 1958); *Lampert* v. *Lampert*, 268 App. Div. 920, 51 N.Y.S. 2d 343 (2d Dept. 1944). But compare *Amos* v. *Amos*, 282 App. Div. 692, 122 N.Y.S. 2d 612 (1st Dept. 1953).

Respondent argues that the "upon condition" provision of the resettled order, coupled with the provision permitting petitioner to file another application for similar relief in the event that the voluntary payments were discontinued, is sufficient to constitute such order a judicial direction and therefore a decree "requiring" the payments to be made within the meaning of section 71(a)(3). Perhaps these provisions reflect a fuzziness in the New York procedures dealing with support payments during the period between the institution of an action for separation and the trial. See *Palmieri* v. *Palmieri*, 8 Misc. 2d 396, 168 N.Y.S. 2d 48 (Sup. Ct. 1957). In substantive terms, however, these provisions amounted to no more than a rationale for the action taken and a pronouncement that the New York Supreme Court might take *further action* at some future date which would *then* expose petitioner's husband to the imposition of judicial sanctions. They had no *in praesenti* effect and consequently should not be equated with affirmative action directly contrary to the specific denial of the motion for temporary alimony. The contrast between an affirmative order and a conditional denial of alimony can be analogized to the difference between a warning and a ticket for a traffic violation. We are reinforced in our analysis by the fact that the New York courts are mandated to take into account the tax implications of decretal provisions for support. *Kraunz* v. *Kraunz*, 293 N.Y. 152, 56 N.E. 2d 90 (1944); *Link* v. *Link*, 11 App. Div. 2d 651, 201 N.Y.S. 2d 548 (1st Dept. 1960). Clearly, at the time of the resettled order, that mandate was not observed since the amount of the support payments, which prior thereto were concededly nontaxable, remained the same.

Nor do we think that the trial court's oral characterization of the resettled order as a "temporary award of alimony" or its oral direction that such payments be increased requires a different conclusion. Such

oral pronouncements do not satisfy the requirements of New York law and consequently cannot be elevated to the status of an order or decree, the violation of which would be subject to judicial sanction. See N.Y. Dom. Rel. Law secs. 236, 244, 245 (McKinney 1964) ; N.Y. Civ. Prac. Rule 2219 (McKinney 1963) ; *Kolmer* v. *Kolmer*, 13 Misc. 2d 313, 178 N.Y.S. 2d 258 (Sup. Ct.), aff'd. 6 App. Div. 2d 1001, 177 N.Y.S. 2d 1009 (1st Dept. 1958) ; *Deshler* v. *Deshler*, 55 Misc. 2d 563, 285 N.Y.S. 2d 444 (Sup. Ct. 1967) ; *School of Music, Etc.* v. *Moritt*, 135 N.Y.S. 2d 43 (Sup. Ct. 1954) ; *Masters* v. *Masters*, 55 Misc. 2d 466, 285 N.Y.S. 2d 815 (Fam. Ct. 1967).

We conclude that, absent some sort of currently enforceable judicial decree or order, section 71(a) (3) does not apply. A contrary holding would read the word "requiring" out of the section—a word which is contained not only in the statutory language itself but is specifically used in the legislative history. See S. Rept. No. 1622, 83d Cong., 2d Sess., p. 10 (1954).

In view of our holding, we need not consider the second prong to petitioner's argument, namely, that, in any event, the payments in question were the result of her husband's voluntary act and therefore not made "under a decree." Cf. *George R. Joslyn*, 23 T.C. 126, 137 (1954), affirmed in part and reversed in part 230 F. 2d 871 (C.A. 7, 1956). Nor need we reach the further question involved herein, namely, the scope of the payments covered by the resettled order.

*Decision will be entered for the petitioner.*