WALTER J. DEAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dean v. Commissioner
Docket No. 4844-80.
United States Tax Court
T.C. Memo 1981-554; 1981 Tax Ct. Memo LEXIS 194; 42 T.C.M. (CCH) 1237; T.C.M. (RIA) 81554; September 28, 1981. Walter J. Dean, pro se. Edward J. Laubach, Jr., for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in the amount of $ 418 in petitioner's income tax for 1977. The issue to be decided is whether petitioner is entitled under section 215[1] to a deduction in the amount of $ 1,972, or any amount, for alimony payments to his former wife. FINDINGS OF FACT *195 At the time the petition was filed, petitioner was a legal resident of Pittsburgh, Pennsylvania. He filed his income tax return for 1977 with the Philadelphia Service Center, Philadelphia, Pennsylvania. On June 30, 1950, petitioner was married to Susan Tomlinson Wheeler (hereinafter Susan). In 1975 he and Susan had financial difficulties and on March 10 of that year filed a petition in bankruptcy. On June 23, 1975, petitioner's marriage to Susan was dissolved by a decree of divorce entered under the "no fault" divorce laws of Ohio, on the petition of both parties. Attached to the decree and referred to therein was a separation agreement which shows Susan's address as Dayton, Ohio, and petitioner's address as Pittsburgh, Pennsylvania. The agreement, dated May 19, 1975, provided that Susan [2] would thenceforth own all of their personalty except an automobile, items of jewelry and personal clothing as previously divided, and items of furniture for which petitioner was to pay Susan $ 800 at the rate of $ 50 per month. He paid her this $ 800 immediately. The agreement further stated that: "It is agreed there will be no alimony." At the time of the divorce, no agreement, oral *196 or written, existed between petitioner and Susan that he would pay her alimony at any time. At the time of their divorce, petitioner and his former wife had two children who were both over 18 years of age. Following the divorce on June 23, 1975, Susan continued to reside in Dayton, Ohio, where she was employed by Cole Layer Trumble Company, and petitioner resided in Pittsburgh. Susan became unhappy with her living arrangements in Dayton, and her children asked petitioner to invite her back to Pittsburgh. In October 1975, petitioner offered Susan an opportunity to move back to his residence in Pittsburgh on the understanding that he would provide her with shelter and pay her expenses but that they would not remarry. She accepted the offer, moved back, and continued to live in his residence until November 12, 1977, when she moved to West Palm Beach, Florida. Sometime after October 1975, petitioner signed a statement dated "Oct. 1975" as follows: Statement concerning alimony Walter J. *197 Dean To Susan L. Dean I. I agree to secure and pay for a $ 25,000 life insurance policy on my life to be made the property of Susan L. Dean. II. I agree to pay $ 25.00 per week--minimum. (I'll pay as much as I can afford up to $ 100 per week). III. These payments are to continue indefinitely except that in case Susan L. Dean remarries they are to stop. W. J. Dean This statement was never shown to Susan and its terms, with the exception of the life insurance provisions, were never discussed with her. Petitioner retained ownership of the insurance policy. After Susan returned from Dayton in October 1975, petitioner and Susan leased a condominium apartment located at 970 Chatham Park Drive where they lived. Pursuant to the lease, signed by both of them, they obtained an option to buy the condominium. During this period, petitioner gave Susan sums ranging from $ 25 to $ 75 weekly to buy groceries and pay household expenses and cover incidentals for both of them. In addition, during 1977 petitioner paid her additional sums in discharge of a loan and gave her money for her personal use and savings. In November 1977, petitioner and Susan again decided to separate. *198 They had accumulated some jointly owned assets, and they agreed on the terms of the division of the property accumulated after October 1975 as follows: November 11, 1977 AGREEMENT BETWEEN WALTER J. DEAN AND SUSAN L. DEAN
Net settlement to Sue Dean
$ 3,000.00
Paid in cash
$ 300.00
Paid by check
1,000.00
Paid by check
400.00
Received 11/11/77
$ 1,700.00
Plus car repair, etc.
$ 70 credit card
Tires
300.00
$ 2,000.00
2,000.00
$ 1,000.00 balance
due 12/15/77
I hereby agree to mail $ 1,000.00 to Sue Dean by December 31, 1977. /s/ Walter J. Dean / Walter J. Dean I further agree that Sue Dean's name shall remain as beneficiary on a life insurance policy of $ 25,000.00 with Aetna Insurance Company until such time as I am deceased. Pol. # N3467383. /s/ Walter J. Dean / Walter J. Dean Further, that Sue Dean will remain as my beneficiary on my pension/retirement plan from Commerce Clearing House, Inc.
/s/ Walter J. Dean / Walter J. Dean Pursuant to this agreement, petitioner in 1977 gave Susan numbered checks on the dates and in the amounts as follows: Number
Date
Amount
631
11/11/77
$ 1,000
632
11/11/77
400
668
12/15/77
1,000
681
12/20/77
300
*199 In addition, petitioner gave Susan a Check for $ 137.50 to cover her interest in two chairs. Check No. 668 bears the following endorsement: Payment in full for 970 Chatham Park Dr. PGH. /s/ Susan L. Dean The above-endorsed signature valid only if and when this check clears Pittsburgh National Bank to Barnett's Bank of Lake Worth. On his income tax return for 1977, petitioner claimed an alimony deduction in the amount of $ 1,972, which was comprised of weekly payments of $ 25 and life insurance premium payments of $ 672. Respondent disallowed the claimed deductions. Petitioner concedes that the life insurance premium payments of $ 672 made in 1977 are not deductible as alimony. OPINION Section 215 allows a deduction by a husband for alimony or similar payments only if such payments are includible in the gross income of his wife under section 71. The general rule is stated in section 71(a) as follows: (1) Decree of Divorce or Separate Maintenance.-- If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's *200 gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. As pointed out in our findings, petitioner and Susan were divorced on June 23, 1975. To the divorce decree was attached the written agreement providing for the settlement of their property interests and stating that: "It is agreed there will be no alimony." The decree was not modified at any time thereafter. Although petitioner and Susan lived in the same residence from October 1975 to November 1977, they were not remarried, and there is no allegation (indeed, a denial) that their relationship during this period made them husband and wife. Because they were not husband and wife after their June 23, 1975 divorce, it is clear under section 71(a) that the payments in dispute were not made in discharge of "a legal obligation" arising from the "marital or family relationship" and, if any such obligation existed, it was not incurred "under a written instrument *201 incident to such divorce." The only written instrument incident to their divorce--the one attached to the June 23, 1975, divorce decree--plainly states that it is agreed that there will be no alimony. Cf. Dauwalter v. Commissioner, 9 T.C. 580, 585 (1947); Sharp v. Commissioner, 15 T.C. 185, 187-188 (1950). As we understand petitioner's position, it is that, despite the May 1975 agreement that there would be no alimony, the Ohio court could have modified the decree at any time to compel him to support his former wife. Believing this to be true, he agreed in October 1975 to provide her with support and funds until she could become self-sustaining without waiting for the formal compulsion of the Ohio courts. Thus, he argues, the issue is one of substance versus form. As a matter of substantive law, he argues, he was obligated to support Susan because of their previous marital relationship even though as a matter of form the Ohio court had not yet ordered him to do so. The law of Ohio is not clear that the no-alimony provision of the separation agreement and the June 23, 1975, divorce decree were subject to modification in the circumstances of *202 this case. Compare Law v. Law, 64 Ohio St. 369, 60 N.E. 560 (1901); Newman v. Newman, 161 Ohio St. 247, 118 N.E.2d 649 (1954); and Mozden v. Mozden, 162 Ohio St. 169, 122 N.E.2d 295 (1954) with Wolfe v. Wolfe, 46 Ohio St. 2d 399, 350 N.E.2d 413, 427 (1976). This last case, decided in 1976, which altered to some extent the Ohio rule against the modification of divorce decrees incorporating agreements as to alimony, states that the new rule is "to be applied prospectively only to decrees incorporating separation agreements entered after the date of this judgment." But regardless of the applicable Ohio rule, the fact remains that the decree had not been modified in 1977 when the disputed payments were made. Thus, those payments were not made under a court decree requiring the payments or under a written instrument incident to the divorce or separation but as a voluntary act on petitioner's part. They, therefore, do not qualify as deductions. See Taylor v. Commissioner, 55 T.C. 1134, 1138 (1971). We conclude that petitioner is not entitled to the claimed alimony deductions. Decision will *203 be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. The divorce decree as well as the separation agreement spell Susan's name as "Suzanne." The stipulation, the transcript, and other documents in the record show her name as "Susan."↩