■ SALLY COOPER, Respondent, v HOWARD COOPER, Appellant.—Order, Supreme Court, New York County (Hortense W. Gabel, J.), entered February 7, 1986, which granted plaintiff's motion for pendente lite relief to the extent of, *inter alia,*

awarding plaintiff $1,750 per week temporary maintenance and $250 per week child support, is affirmed, with costs.

In 1964 plaintiff wife and defendant husband were married. The only child of the marriage is a son, who is aged 18 and is a full-time college student.

Although many years ago plaintiff was employed as a stockbroker, since this marriage she has primarily been a housewife. Plaintiff wife has assets of her own, which mostly consist of securities that are valued at between $400,000 and $500,000 and from those securities she receives more than $20,000 per year in dividends. In addition, last year plaintiff earned $47,000 in capital gains from the sale of some of her securities, and she also received $6,000 in trust income.

Defendant is employed as a real estate mortgage banker, and he does not dispute plaintiff's allegation that he is the largest independent mortgage broker in the United States. Furthermore, defendant does not deny plaintiff's allegation that he is a very wealthy man. Specifically, plaintiff contends that defendant is worth over $5 million, and that in 1983 defendant earned $647,000 from his business.

During the parties' marriage, they have enjoyed a lavish life-style. For example, they have three homes: a cooperative apartment in New York City worth approximately $800,000, a summer home in Easthampton, Long Island, worth approximately $500,000, and a condominium in Palm Beach, Florida, worth approximately $200,000; plaintiff has a Jaguar automobile, while defendant has several vehicles, including two Cadillacs and an airplane; plaintiff has four fur coats and vacations frequently; and, plaintiff spends substantial sums of money on personal care.

Plaintiff is 49, and defendant is 58 years of age. After approximately 21 years of marriage, in 1985, plaintiff commenced an action for divorce, upon the alleged grounds of the cruel and inhuman treatment of plaintiff by defendant and the adultery of defendant. The relief sought by the plaintiff in her complaint includes child custody and support, equitable distribution of all marital assets, maintenance, exclusive occupancy of the marital residence, and counsel fees.

Subsequently, plaintiff moved, by order to show cause, for an order granting pendente lite maintenance, child support, exclusive occupancy of the marital residence, and other incidental relief. The defendant opposed. Thereafter, Special Term granted plaintiff's motion in part. Thus, Special Term, *inter alia:* awarded plaintiff $1,750 per week temporary mainte-

nance and $250 per week for child support; directed defendant to continue to pay the carrying charges on the parties' residences; directed defendant to maintain and continue the medical and dental insurance on behalf of plaintiff and the parties' child and to pay all unreimbursed nonelective medical and dental expenses for that child; and, directed defendant to continue to pay all tuition and school-related expenses for the child.

After entry of Special Term's order, defendant appealed and plaintiff cross-appealed.

Based upon our review of the record, we find that Special Term did not abuse its discretion in its order. As "[we] have stated many times * * * the proper remedy of a party who thinks that temporary support payments ordered are excessive, or are insufficient, is to press for an early trial" (*Dreyfus v Dreyfus,* 72 AD2d 522 [1st Dept 1979]; *see also, Belvin v Belvin,* 111 AD2d 546 [1985]).

Our dissenting colleague disagrees with the modest award of $250 per week child support, upon the basis, in substance, that this award has allegedly been counterproductive, in view of the fact that this rich defendant has now limited his son's support to exactly the amount ordered by Special Term, even though he previously voluntarily contributed far more money to the child's support. We reject the dissent's position that, in the case of a wealthy father, child support should depend on the father's whim rather than the law. Even in the case cited by the dissent as legal authority, *Shapiro v Shapiro* (8 AD2d 341 [1st Dept 1959]), the *legal* obligation of a father to provide support for his children was recognized, since in *Shapiro,* we made part of our order the voluntary arrangements for child support made by that father. In contrast, in the instant case the defendant has not moved to make part of Special Term's order his own plan to support his son.

Domestic Relations Law § 32 (3) states, in pertinent part: "Parents [are] liable for support of their * * * children". Based on our examination of the language of this provision of the Domestic Relations Law, we hold that all fathers, whether rich or poor, are under a legal obligation to support their children. Incidentally, in an affidavit submitted to Special Term, plaintiff alleges that: "my son is in a very vulnerable position, vis-a-vis his father * * * His travel expenses are very important because our son is legally blind in one eye and needs to come to New York regularly to see his doctor". Furthermore, we note in passing that the law of this State does not prohibit a well-off father from voluntarily supple-

menting the amount of child support ordered by Special Term, nor is it unusual for fathers to often contribute an amount in excess of that which a court orders for maintenance of a child as an expression of filial affection. We note, in passing, that defendant contributed well in excess of the court-awarded sum of $250, but elected to reduce his contribution to exactly that sum, once the court order was issued. Concur—Ross, Fein and Rosenberger, JJ. Kupferman, J. P., dissents in part in a memorandum and Kassal, J., joins Justice Presiding Kupferman's dissent and dissents separately in a memorandum, all as follows:

Kupferman, J. P. (dissenting).

The parties have a son 19 years of age who is presently a full-time student at college. There is no doubt about the affluence of the parents, with the father being a man of very substantial wealth.

In addition to awarding to the wife $1,750 a week in temporary maintenance, $250 per week was awarded to her for child support. There was no rational basis for the latter award for the child. It is uncontroverted that the father fully provides for the son, including shelter, sustenance and clothing, as well as tuition and transportation without limitation. Further, the father maintains a custodial account for the son with securities of over $60,000, plus giving him a pocket allowance of $200 per month.

There is absolutely no reason why the difficulties between the parents should lead to the father having to pay over to the mother support for the son. The result of this award has been that the father has cut out his voluntary payments and limited support for the son to the award. A court should not interfere with a father-son relationship by imposing an intervening surrogate simply because the parents are involved in a dispute. *(See, Shapiro v Shapiro,* 8 AD2d 341.)

Kassal, J. (dissenting).

I join Justice Presiding Kupferman's dissent but would add the following:

The father has provided very amply and lavishly for his son over many years. He asks for the opportunity to do so voluntarily and "not under the gun" of a court mandate. I find this to be reasonable under the facts and circumstances of this case. Defendant's relationship with his son unfortunately has been caught up in the bitter and intense feeling between his wife and himself in this matrimonial litigation, which is not unusual.

I would afford him the opportunity to resume such payments as he had regularly made prior to the court's order, recognizing that there are appropriate remedies if he fails to do so, including the imposition of counsel fees which, in my view, would then be warranted.